Yes, Your Honor. Thank you. We have 20 minutes again set for each side. And please save some time, Mr. Smith, if you'd like to make rebuttal arguments. Thank you. I would like five minutes, Your Honor, and I'll do my best to watch the clock. My client suffers from chronic obstructive pulmonary disease and periodontal disease. These are serious diseases. Her periodontal disease, in particular, is going to cause her to lose all of her teeth, and the treatment will cost several hundred thousand dollars. She was never warned of this, although the defendants knew of it. But we show you at the records of Record Volume 1 what an adequate warning would be. And if Canadian children get this from the defendants, but American children don't get this warning, it's a picture of a mouth that's deteriorating grossly under the suffering of the periodontal disease, causes the loss of teeth and bones. The question before the Court is whether the Court below properly granted judgment on the two points to make today. Solomon is not controlling, for reasons I'll explain. And California law since 1980 has been a two-disease state. So the correct ruling would have been that whenever she knew about addiction, she didn't know or have reason to know about the periodontal disease or the COPD, and therefore those claims should proceed. All right. Let me just proceed your argument by asking about certification of the issue to the California Supreme Court. We would welcome it. All right. Although I hope by the time I'm finished, you'll agree with me that it's not necessary. I assume that's your hope. So let me turn to Solomon. The test with which you are to look at Solomon, as I understand it from your prior decisions, and I'll cite particularly In re Watts, W-A-T-T-S, at 298F3, 1077. 298, 1077. In re Watts cites about four of your cases, and the standard is that if you have a prior case that attempted to evaluate California law, and there are subsequent developments that call that case into question, you are at liberty to look at the subsequent developments and to rule that the prior case did not accurately state California law. So now the question is, do we have subsequent developments? And the answer is yes, we definitely do. Those are a California Supreme Court decision, which has been discussed this morning, called Whiteley. That was my case in the California Court of Appeal. We have another California. You said Supreme Court. I misspoke. We do not have a single California Supreme Court case, do we? Not since Solomon. I will give you four that predate Solomon that support the two-disease rule in a minute. But right now I'm. But you are speaking about. Right now I'm trying to help. Whiteley Court of Appeals case. I apologize. Yes. I misspoke. It is a final. Yes. Intervening cases since Solomon are probably most relevant to assessing whether you can or should consider certifying. Yes, and I can present these to you, and you'll have to decide which way you want to go with it, whether you can decide this you feel is a matter of state law today or whether you want the California Supreme Court to help you. And we either way is fine with us. In the Whiteley case. The way is fine, but one way is finer. No, actually, either way is fine. We think the same result will obtain. Somewhere during your argument. Please address Mr. Collins argument that we heard earlier that raises the question whether certification is an improper collateral attack. I don't believe it is because I believe that by the time we're finished, you'll at least agree that there is a question about California law that Solomon does not resolve, and therefore you would legitimately want an answer from the California Supreme Court. That's at a minimum. We would have to, in my view, just as one judge, we would have to think there's an issue Solomon didn't address or that there's an issue that the California courts have stirred up after Solomon because we would have to take Solomon as binding. Well, yes, you may or may not, because the case before Solomon is contrary to Solomon, so you have a conflict within the circuit, but it is definitely possible for you to say that Solomon does not resolve the issues in this case. In Ms. Grisham's case, her suit has independent claims for COPD and for, excuse me. I missed that. Independent claims for? COPD, the chronic obstructive pulmonary disease, and the periodontal disease, which were diagnosed in 2001 timely within one year of the filing of this suit. There's no dispute about that. So the question that's in this case that was not resolved in Solomon is whether she may recover and whether based on the timely filing of a complaint within one year of the diagnosis of the disease that I just referred to, the two diseases that I just referred to, Solomon may be fairly read as a case limited to addiction, that he claimed that he had been subjected to addiction and that the defendants had not disclosed that honestly to him and that he did not know about his addiction until he saw this movie or a press release about Jeffrey Wygant, the insider who went public with the industry knowledge about addictions in 1999. And the California courts have in Brandon G. at 111 Cal App 4th limited Solomon as follows, and I'm quoting Brandon G. 111 Cal App 4th at 36. At the most, and I'm quoting, Solomon stands for the proposition that a person who suffers harm from a product is thereby put on notice that an earlier representation that the product will cause no harm was false. And in the content of Solomon, that means that he said, you didn't tell me that it was addicting or you said it would be healthy, and that was contrary to the fact of addiction. Then he became addicted, and what our court says in Brandon G. says, well, at least you know at that point in time that the representation about no addiction was false. That does not apply here. When my client became aware that she had the pulmonary disease and the periodontal disease, she sued immediately. She sued timely. So this case raises a question that was not in Solomon. If you read Solomon the way I'm suggesting that I think it should be read, it has to do only with addiction. That's why the judge in Solomon started back with a 1640 counterblast about tobacco being addictive and everybody knows it's addictive. Now, there are other questions about addiction that I'll get to because maybe I'm there now, so I'll just address them. But did people have knowledge? They knew it was addictive. Did they have knowledge it caused health hazards in general? That is not sufficient for California statute of limitations law. You have to know that you have an injury, and the injury in this case is the pulmonary disease and the periodontal disease. And even the cases cited in Solomon Norgardt says that that's the California standard. So knowledge of health risks is not sufficient to start the statute of limitations, and it's a question of fact as to whether my client would have had knowledge about pulmonary disease or periodontal disease more than a year before filing suit. And that's not the basis of this judgment on the pleadings that she had such knowledge, so you can't rest that affirmative on that basis. So let me go to what's been stirred up since Solomon in California law. You have the Whiteley decision at 117 Cal. App. 4th, and at page 690 the court says, quote, We find Solomon is unpersuasive on this issue, close quote. And what they reject Solomon on is the issue of common knowledge of the risks of tobacco, the very basis on which the judgment on the pleadings was entered against my client, common knowledge of the risks. Now what Whiteley had before it was a full trial. Whiteley had before it the evidence that's been referred to here by my predecessors of the fraud and the affirmative misrepresentations by the tobacco industry that smoking is healthy and safe and that you don't have to worry about any diseases, and we're researching it, and if we find any diseases, we'll let you know so you can rest assured and rely on us. And by implication, do not trust any of the criticisms or health warnings that the government is putting out. And the judgment in Whiteley rested on the jury's acceptance of what I just said, that the industry's disinformation carried the day with the consumer, and prevailed over contrary accurate information about health risks. So the very premise of the Solomon decision has been rejected in the Whiteley case. And I mentioned Brandon, which also confines Solomon in a way that would not support our judgment. And the third development is this. The California legislature in 2003 enacted a new statute of limitations, CCP 340.8. It has to do with the statute of limitations on toxic exposures. And the point I want to make is in the course of it, they said, here's our intent. Our intent is to enact a statute that says you don't have to sue until you know that something wrongful happened. And they cite as a case that they are codifying the Clark case, Clark v. Baxter at 83 Calab Fourth. And when you look at Clark, which is a latex disease case in which the person had a bad reaction to the latex gloves for several months or years, but did not have toxic shock until more than a year later, and Clark allowed that suit even though it was filed more than a year after the adverse reactions, because Clark said our standard is that the plaintiff has to have known more than a year ago that something wrongful occurred in the creation or the design of the latex glove. Now, how does that apply? It applies to our case as follows. There is no evidence that my client knew of anything wrongful about what the tobacco companies did with respect to addiction. She didn't know that they injected ammonia and other additives into the tobacco to intensify the addiction. She didn't know that by approaching her when she was 12 and 13 years old as a mere child, that pharmacologically her addiction would be all the more intense because she started it as a 12 or 13-year-old and that therefore she would have much more trouble quitting when she's an adult. The statistics show that most smokers are smokers by the time they're 20. If the defendants don't catch them by the time they're 20, they're going to be smoke-free. And that's a pharmacological fact that the defendants knew about, causing minors to commit an illegal act to smoke cigarettes because of the pharmacology of it. Well, she didn't know that. So my point is the legislature has reaffirmed since Solomon that the standard for triggering a statute of limitations is the knowledge or reason to know of wrongful conduct. And that evidence is not here. They did not present that evidence in the district court. This judgment does not rest on the plaintiff's knowledge or reason to know of the defendant's wrongful conduct more than a year before she sued. So those three points, the Whiteley case, the Brandon G. case, and the enactment of 340.8 in 2003, are later developments that completely undermine the Solomon decision and its premises. Now you're free to look at California law afresh because of these later developments. Excuse me. Your last statement gave me pause. I thought you said that Solomon didn't really apply to your case. I also said that, yes. But you just said that these cases, Brandon G., Whiteley, and so forth, undermine Solomon. Yes. I have to take both positions, and they're both valid. All right. You're arguing the alternative. Yes. Solomon doesn't apply because of the question that Justice Gould asked about is there a new issue here that wasn't in Solomon. The answer is yes. The issue is did her later developing diseases, did she have reason to know of them merely because of the addiction, whereas Solomon could be read as only an addiction case. So that's distinguishable. But if you think it's not distinguishable, we have recent developments in California to show that it was wrong, and California wouldn't follow it. And now when you look more fully and open the door to all of California law, what you find is four California Supreme Court decisions that support the two-disease rule, and those are Hamilton in 22 Cal 4th, which was an asbestos disease, then a mesothelioma. And they said these are separate diseases. They have separate causes of action. They have separate statutes of limitation. Hamilton is a 2000 case, 22 Cal 4th. I'm going to cite ten cases that were not presented to the Solomon Court. Electronically you can get Mr. Solomon's brief and see that none of these ten cases were presented. You were misled in the Solomon case about the state of California law. The second California case is Potter in 6 Cal 4th. Potter allows a plaintiff who has a toxic exposure and where the fear of cancer is based on a reasonable probability of getting cancer to sue for the fear before the cancer develops. And implicit in Potter, allowing the plaintiff to sue for the fear of cancer is also allowing the plaintiff to sue for the cancer when it later develops. Two suits, two conditions, two statutes of limitation allowed by the Supreme Court in Potter. The third Supreme Court case. Counsel, I hate to interrupt you, but rather than reading us the ten cases, you have only three minutes and 46 seconds left. I assume those cases were cited in your brief. Well, Your Honor, I've come in for oral argument, and that's why I submitted a list of cases to be discussed at oral argument, but I want to be sure that you have these. I was just worried that you're going to run out of time. We have those cases if you wanted to use your time. Otherwise, it's entirely up to you. Thank you very much. I appreciate that, Your Honor. I have one more Supreme Court, two more Supreme Court cases, and then I'll talk about two appellate cases, and then I'll sit down. Whitfield in 10 Cal 3rd. We have a diagnosis on October 63. We have a second diagnosis more than a year later. The plaintiff is allowed to sue within one year of the second diagnosis. California Supreme Court, two disease rule, Whitfield, 10 Cal 3rd at 874. Now let me go to two appellate cases that one has been cited, both have been cited. Martinez-Ferrer, an opinion by Justice Kaus when he was on the Court of Appeal, later became a Supreme Court judge, one of the most brilliant judges California has ever had. Martinez-Ferrer, there's a medical reaction to a drug in 1960. In 1980, cataracts develop. He says it would be an injustice, it would be a miscarriage of justice, that's a quote, it would be a miscarriage of justice to throw the plaintiff out on the cataract claim, which developed 18 or 20 years later, simply because there was a significant but different injury 18 years earlier. And he points out the logic of what we're advocating. If the doctor who was the plaintiff in that case had sued in 1961 for cataracts, which he did not have, Justice Kaus said he would have been laughed out of court. Yes, thank you, Your Honor. I'll make one last discussion of the Miller case, which is a case that I think my colleague is going to rely on. Miller is a mold case. Miller is not this case because in Miller the disease was the same disease. The only reason the plaintiff sued late was because of a misdiagnosis. And what I hope you'll pay attention to and ask your staff to bring to your attention is the concurring opinion of Justice Earl Johnson in the Miller case. Again, one of our brightest appellate judges, a former professor at USC, and what he pointed out is the two-disease rule. He said our majority opinion in Miller is not inconsistent with the two-disease rule. And he cited many cases from out of state that support the two-disease rule, and the majority did not disagree with him. They just simply didn't discuss the two-disease rule. So Miller is a case that supports this. Thank you. I'll reserve my minute. Good morning, Your Honors. May it please the Court. Solomon is on all fours with this case. Indeed, if anything, this case is an even stronger case for the application of the rules in Solomon and even Solomon itself. Mr. Collins, is this a stronger case for certain? It is not an appropriate case for certification for a variety of reasons. First, as I indicated earlier, certification is not an appropriate basis for a collateral attack on another panel's decision under FDIC versus McSweeney. Prior panel's decisions, even on state law, are binding in the absence of some basis. There's been no intervening California Supreme Court decision that would allow a panel to set it aside. And indeed, as I argued earlier, the Whiteley decision does not provide a sufficient basis for undermining any of the conclusions in Solomon. So it's the same argument as it was in Cannata. Basically the same. I have a few additional points that I think the Court would say that only the California Supreme Court can kick up some dust on the issue, as opposed to an intermediate appellate court, because often on the certification rules, I'd have to go refresh my memory on California, but many of the States tell us if there's law in the intermediate appellate courts, we're supposed to look at that, too. I think you can look at it as well as data. That's how it's been described. And even in the McSweeney case, there was presented an intervening, some intervening California appellate decisions. The panel said none of these are pertinent, but then dropped a footnote indicating we found a case on our own from an intermediate California appellate court that would be controlling, and then rejected it, said we don't think the California Supreme Court will buy this, will adopt this rule, and therefore it provides no basis for the entire panel's decision. I'm not saying that an accumulation of a body of intermediate appellate law could never provide a basis for raising a question concerning certification, but we're not even close to that here, because all you have is admittedly dicta in Whiteley. And as I explained before, Whiteley, although it does not admit that its discussion of Solomon is dicta, it is dicta on its own terms, because it recognized that what Whiteley was saying on common knowledge was inconsistent with what another court of appeal had said in Barker. And it said, well, Barker was dicta because the issue had been found to be waived in Barker. But, of course, on the page prior in Whiteley, the Court makes the very same finding with respect to common knowledge in Whiteley, that it had been waived, and therefore the issue was dicta in Whiteley. It also only goes so far. It only goes to the issue of common knowledge. It doesn't address any of the other issues that were addressed in Solomon. And, indeed, the key issue about whether what you do when you're confronted with a complaint that alleges addiction as injury and that seeks compensation, indeed, as in this case, seeks compensation. And there's no basis in the statute that you can comment about a two-damage or two-tort rule or, you know, separate, but there's separate claims. There's no statute run separately on it. There's no basis since – in the law since Solomon to question California's adherence to the one-injury rule. Hamilton rests specifically on a special statute that applies to asbestos claims, section 340.2 of the California Code of Civil Procedure. It rests its statute of limitations holding on that. Indeed, the way it construes the statute of limitations in Hamilton, it found that, in fact, it had never still, as of the time of the decision, had not yet been triggered. And it also found that any issue about claim splitting had been waived in the case. So it does not in any way provide a basis for questioning the California's adherence to the one-injury rule. And it shows that the California legislature knows how to change the law when it wants to. The fact that another statute was cited, 380 – 340.8, again, is only further indication that the legislature knows how to change the one-injury rule where it thinks that it leads to unfairness. But there is nothing since Solomon that has been pointed to that provides any basis for undermining the conclusions that another panel of this Court reached on the questions of California law that were presented there. I would point out, while I'm on the two-injury rule, that Whitfield is not, in fact, a two-injury case. I don't think Whitfield has very much to do with the case. And I don't think you get to it because it's a pre-Solomon case in any event. But just for clarification, because it was brought up in the 28J submission, the decision in the New case has a discussion of Whitfield. It is dicta because it ultimately doesn't feed into the holding in New. But it flatly misdescribes the facts of New. New is not even ñ it's not a two-injury case. It's a misdiagnosis case. The plaintiff in Whitfield was diagnosed with anorexia in October of 1963. And, in fact, she had a brain tumor. And the only issue that was relevant to statute of limitations was when the claim against the county had accrued under the government code. And the issue, it's very clear from the facts, is whether or not there was a time lag in 1964, I believe it was, with respect to when she became aware that the county was involved in the malpractice as opposed to just the doctors. Because the doctors had been sued first, the county was added later, and the county said it was too late to add them to the suit. So it is not a two-injury case at all. Again, I don't think it's an important issue, but I wanted to clarify it for the record since I've not previously had an opportunity to do that. Also, this Court's opinion in the Nodine case, which we cited, specifically applies the one-injury rule in California in the context of a fraud claim. So, again, I think we don't have any basis for questioning California's adherence to the one-injury rule. But this case is also not a suitable vehicle for certification because of its posture. Here we have a case where nicotine addiction was specifically alleged as an injury. That's in paragraphs 33 to 35 of the complaint. The complaint, again, as in Kanana, here in paragraph 160, specifically seeks recovery of the money spent on cigarettes since the point she was addicted. So it asserts it as an injury and actually seeks a monetary recovery for that injury. Moreover, as Judge Wilson noted in his opinion at page 5 of his opinion, he notes that in their own opposition, even though they were trying to contest the issue of appreciable injury, they in fact, the plaintiff here actually characterized addiction as one of her three, quote, appreciable injuries. He recognized that in the opposition and noted that in his order. So if there were ever a suitable vehicle for certifying to the California Supreme Court, and we submit there's no basis to do that, this is not the right case in which to do that because a case in which the plaintiff has alleged it so specifically as an injury, sought a monetary recovery and then made that kind of a comment in her own opposition does not really present the kinds of issues on which certification is being sought here. Moreover, this case is in a second respect even stronger than Solomon because in Solomon, the court had to address the issue of basically constructive knowledge. Here, however, there is actual knowledge right on the face of the complaint. The complaint makes clear that she had knowledge of her addiction to nicotine at the time that she joined Nicotine Anonymous in 1993. That's in paragraph 35 of the complaint. And indeed, in page 16 of the opening brief, she specifically concedes that the complaint establishes that she knew of addiction in 1993. Again, this is so clearly a case in which Solomon applies. It might, if there were ever a case in which it would be appropriate to certify the questions, it would be where in fact there is a stronger basis for questioning whether there was an appreciable injury or whether or not such a claim had been asserted. But where these kinds of allegations are made on the pleadings and the knowledge is there on the face of the complaint, that's not a suitable vehicle for certification. I also think that the experience in the Spain case with certification also counsels against doing so. In the Spain case, the Eleventh Circuit certified some of the same questions that Ms. Grisham is asking to be certified to the California Supreme Court. Indeed, her brief notes that fact in the opening brief. And what happened is there was essentially three years of delay in getting the response. And the response was a fractured majority in which only three of the five justices in the majority on the statute of limitations issue even reached the issue whether addiction was an appreciable injury. The two concurring judges only said that on the facts of this complaint, the statute of limitations did in fact start to run when the addiction occurred. Although they're very short statements of concurrence, it's very clear that what they were doing was taking the same approach that this court took in Solomon. And that is in effect the majority position of the Alabama Supreme Court that came back to the Eleventh Circuit in Spain. And so for the three years of certification, all that came back is the same answer that this court reached in Solomon, which is that you don't need to get into the underlying question of whether or not addiction is an appreciable injury when it is all over the face of the complaint in this respect. And you can just then say that the statute of limitations applies from that point forward. And then, again, with the one injury rule, it clearly bars all of the claims for relief at this point. The other arguments that the plaintiff has offered for distinguishing Solomon are also unavailing. Plaintiff alleges that she was not diagnosed with periodontal disease until 2001. But that fact doesn't distinguish the Solomon case because Solomon made a similar allegation. On page 972 of the Court's decision, the Court notes, quote, he was diagnosed with dyspnea and orthopnea in January 2003. That that was the basis for trying to say that the complaint was timely, and the Court rejects that. There's simply no basis for distinguishing Solomon from this case in that regard. On the issue of whether or not there is common knowledge, again, as the Court noted, it cites the Nagala case, and Nagala makes clear with its citation to American Tobacco, as I described in the Kanata case, that there is not a need to know of every single risk that can occur. Once it is known that the product is dangerous, then that is sufficient to trigger the common knowledge under Solomon, and the subsidiary lesser risk do not defeat that common knowledge. The Sixth Circuit reached a similar conclusion in construing common knowledge in the Royston case, which is cited. Mr. Collins, does anything in your argument defeat his argument of two-injury rule in California? I recognize your point is there is no two-injury rule, but I'm asking you, does anything that you argue refute his argument of two-injury if there is such a thing in California? Yes. All of this is in fact not even, there isn't even a factual basis here for saying that this is a two-injury case, because the complaint makes clear that all of the injuries here stem from addiction. That is very clear in the complaint, that everything is alleged to follow from addiction. It is the agent that mediates and ultimately leads to all of the variety of harms that are asserted. Again, reflecting the logic of Solomon, but making this not really a true two-injury case. So even if a two-injury rule applied, this is not really a two-injury rule, a two-injury case in that sense. It is all addiction. What would be an example of a two-injury case? An example of a two-injury case might be something like in the asbestos context where two injuries have been permitted in the Hamilton case by statute, where it is clear that from the same exposure, two different diseases through different processes emerge. But here, everything emerges from addiction, and then injuries are asserted to follow from that, economic injuries and a variety of physical injuries. In Hamilton, in the asbestos context, you don't have that intermediate single injury that is ultimately the source of then a variety of the sub-injuries. What's the difference in saying you get an addiction and then other harms follow from it, or you get a disease and multiple harms follow from it? Because I think that plaintiff's argument has made clear. They've tried to distinguish and say that they don't come from the same process because if something is simply a further manifestation of a prior injury, it's pretty clear that that's going to be covered by the one-injury rule. So you need to separate them out and have them be separate manifestations. But here that isn't true because everything is alleged to be ultimately caused by addiction. But in any event, it's very, very clear because of the Miller case, that which Solomon appropriately relied upon, that California is a one-injury state and that there is not a sufficient basis in the intervening law since Solomon to raise any question as to California's adherence to it. And indeed, what data points there are suggest that any change needs to come from the legislature and not from a panel of this court. Again, we also have addressed in our papers the various tolling arguments that have been made. Solomon relied on constructive knowledge. But again, here we have actual knowledge. So if anything, the anti-tolling argument is stronger here. And whether or not there was common knowledge of periodontal disease, as I've explained, is not relevant. The notion, finally, one further point I'd like to make is Mr. Smith made reference to You said it would have been laughed out of court. The Jolly case is on all fours with that. Jolly says that the fact that even there being controlling adverse precedent to a claim does not mean that the statute of limitations is tolled. And so the fact that a claim would have failed or might have been viewed as failing under the law at the time is not a basis for tolling the statute of limitations under California law. That is, in fact, exactly what Jolly says, as we've cited in our papers. Unless the Court has any further questions, we will submit. Thank you, Mr. Collins. Thank you, Your Honor. I hope I can do it. You asked about whether we had to rely on only Supreme Court cases, and the answer is no. Subsequent appellate decisions are sufficient grounds to overcome or avoid a prior decision. That's what In re Watts said around page 1082. Your Honor said, referred to our earlier submissions, so let me just refer you to the cases that are in our cases to be discussed at oral argument that show the two disease rule. Those are the Chevron case, the Wagner case, and the Richmond case. Chevron, Wagner, and Richmond. I acknowledge Richmond is not published, but the reason it wasn't published under our publication rule is that it didn't make a significant contribution to the law because California law is a two disease state. And I'm not asking you to cite it. We're asking, what is California law? I'm making a point that the rule that we advocate was cited. It was the basis of an unpublished opinion, and the reason it was not published is because it didn't contribute to California law because that is the law. The only case that counsel cited for what he calls the one disease rule, and I vehemently deny that California is a one disease state, his only case was Miller, and Miller is not a two disease case. Miller is the case of an illness that progressed and was misdiagnosed. There was no second disease in Miller, and Justice Johnson's concurring opinion, which I commend you to read, makes clear that in a proper two disease case, which is what we have here, disease one, addiction, disease two, periodontal disease much later in time, pulmonary disease much later in time, only manifest in 2001. Justice Johnson makes clear in his concurring decision that California law would validate the claims that we have filed as being timely. Yes, Your Honor, may I just, I just need to rebut one thing in ten seconds. Here is the test. You would have had time to when the judge reminded you more than once that you were running out of time and you had submitted on the briefs the points you were making. If the chief says you can go ahead, you can go ahead. Thank you, Your Honor. Here is, I wanted to give you the test for what are two diseases in California. Counsel referred to the Hamilton case. That's correct. Here is the test, and ask yourself if we didn't meet it. These diseases, quote, developed by means of wholly different mechanisms at widely different rates, affected different tissue and organs, manifested themselves at different times and by different symptoms, and carried very different outcomes. We have two diseases here, and our complaint was timely. Thank you, and thank you for the extra time, Your Honor. Counsel, we run over time. If you want another minute, we can give you that. Thank both counsel for fine arguments. That case will be submitted. We have another case on the docket. Davis v. Commissioner of Internal Revenue. That case is submitted on the briefs without argument, and so we are adjourned. Thank you. Thank you, Your Honor. Thank you. Good job. Thank you.
judges: D.W. Nelson, Kleinfeld, Gould